**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-13549 MER |
| MICHELLE C. PIWONSKI ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| KENNETH E. WEAVER ) | Adversary No. 12-01338 MER |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| MICHELLE C. PIWONSKI ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| KENNETH E. WEAVER ) | Adversary No. 12-01339 MER |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| MICHELLE C. PIWONSKI ) | |
| ) | |
| Defendant. ) | |

**ORDER**

On October 10, 2013, the Court held a hearing regarding the Motions for Protective Order and Motion for Sanctions filed by Defendant Michelle C. Piwonski ("Piwonski"), and the Motion Regarding Discovery Matters, Motions to Consolidate, and Motion to Amend filed by Plaintiff Kenneth E. Weaver ("Weaver"). The Court denied Piwonski's Motions for Protective Order with conditions, and initially granted Weaver's Motion to Consolidate on an interim basis. The Court later entered an Order holding the Motion to Consolidate in abeyance. The Court also held the Motion to Amend in abeyance, and took the Motion for Sanctions under advisement.

The Court ordered the parties to file simultaneous briefs addressing the following issues: 1) identification of all remaining claims in Adversary No. 12-1338 MER (the "First Adversary") which may be consolidated into Adversary No. 12-1339 MER (the "Second Adversary") with an explanation of whether

consolidation is proper; 2) whether, pursuant to the Supreme Court's *Stern v. Marshall*[1] decision, this Court has Constitutional authority to hear each claim for relief as set forth in the Complaint in the Second Adversary and any remaining claims for relief as set forth in the Complaint in the First Adversary; and 3) whether permissive abstention from adjudicating any claims for relief before this Court is warranted. In addition, the Court considered consolidation and the applicability of *Stern* to the pending objections to Piwonski's claimed exemptions (the "Contested Exemption Matter").

### A. Should the First Adversary, the Second Adversary, and the Contested Exemption Matter be consolidated?

#### 1. *The First Adversary*

Weaver filed the First Adversary against Piwonski and the Chapter 7 Trustee on May 29, 2012. The Complaint alleged Piwonski misappropriated Weaver's money and property, and she wrongfully claims ownership of real and personal property that was either stolen from Weaver or purchased with the proceeds from Weaver's property. The Complaint contained the following claims for relief: 1) for declaratory judgment that Weaver is the sole owner of the entity known as Paysmart, Inc., a helicopter, and an airplane; 2) for replevin of the helicopter; 3) for declaratory judgment that Weaver is the owner of certain real property in Plano, Texas; 4) for foreclosure on an asserted equitable lien on the Plano, Texas real property; 5) for declaratory judgment that Weaver is the sole owner of certain vehicles; 6) for replevin of the motor vehicles; 7) for declaratory judgment that Weaver is the sole owner of certain personal property; and 8) for replevin of the personal property.

On July 31, 2013, the Court entered an order approving the stipulation between Weaver and the Chapter 7 Trustee. The Order dismissed Weaver's claims against the Chapter 7 Trustee, and dismissed the Chapter 7 Trustee's counterclaims against Weaver. Piwonski filed an Answer on June 28, 2012, and an Amended Answer on July 30, 2012, asserting defenses but no counterclaims.

#### 2. *The Second Adversary*

Also on May 29, 2012, Weaver filed the Second Adversary against Piwonski. The Complaint repeated most of the factual allegations of the Complaint in the First Adversary, and asserted the following claims for relief: 1) for conversion and misappropriation under state law; 2) for civil theft under COLO. REV. STAT. § 18-4-405; 3) for breach of fiduciary duty under state law; 4) for a finding of nondischargeability for conversion, misappropriation and civil

---

[1] *Stern v. Marshall*, ___U.S.___, 131 S.Ct. 2594, 180 L. Ed. 2d 475 (2011) *reh'g denied*, 132 S. Ct. 56, 180 L. Ed. 2d 924 (2011).

theft under 11 U.S.C. § 523(a)(4);[2] 5) for a finding of nondischargeability for breach of fiduciary duty under § 523(a)(4); and 6) for a finding of nondischargeability under § 523(a)(6).

Piwonski filed an Answer on June 28, 2012, and an Amended Answer on July 30, 2012, asserting defenses but no counterclaims.  On September 13, 2013, Weaver filed his motion to amend the Complaint to add a claim for nondischargeability under § 523(a)(2)(A).

### 3. *Contested Exemption Matter*

Both Weaver and the Chapter 7 Trustee objected to Piwonski's claimed exemptions.  Weaver alleged Piwonski undervalued her personal property, and claimed as exempt property that does not belong to her, but rather to Weaver.  Piwonski's responses dispute Weaver's allegations and contend she is entitled to claim exemptions under Texas law.  Piowonski filed an Amended Schedule C of claimed exemptions, to which Weaver and the Chapter 7 Trustee again objected and Piwonski again responded.  Piwonski filed a certificate of contested matter on August 15, 2013.

### 4. *Consolidation*

On September 23, 2013, Weaver filed his Motion to Consolidate Adversary Nos. 12-1338 MER and 12-1339 MER.  In addition, on September 27, 2013, Weaver filed a Motion to Consolidate Adversaries with Objections to Claimed Exemptions, seeking consolidation of the adversary claims with Weaver's objections to Piwonski's claimed exemptions in disputed property in the underlying bankruptcy case.

For the reasons stated below, the Court will abstain from hearing the claims in the First Adversary, and from hearing the first, second, and third claims in the Second Adversary.  Consolidating the adversaries would thus serve no purpose of judicial economy and could lead to procedural confusion.  Further, due to procedural constraints, the Court cannot allow a contested matter in an underlying case to be consolidated with an adversary proceeding.[3]  Therefore, the September 23, 2013 Motion to Consolidate and the September 27, 2013 Motion to Consolidate will be denied.

---

[2] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[3] The Court may allow the matters to proceed on parallel tracks.  That determination will be made when the Court is closer to setting actual hearing dates.

**B.    Is Abstention Appropriate for Some or All of Weaver's Claims in the Adversary Proceedings?**

Initially, the Court notes on July 8, 2013, following a hearing, the Court entered an Order approving the Chapter 7 Trustee's Motion to Approve Asset Purchase Agreement Between Glen Anstine, Chapter 7 Trustee for the Bankruptcy Estate of Michelle C. Piwonski, and Kenneth E. Weaver for the Benefit of Tasowio Funding, Inc.[4]  That Order approved the sale by the Trustee of all nonexempt assets of Piwonski's bankruptcy estate, including but not limited to the following:

- PaySmart Payment Solutions, Inc.
- 318C Alouette Helicopter N309DB
- Mitsubishi MU-2B-25 Fixed Wing Multi-Engine Plane N311RN
- residence at 5748 Cadence Lane, Plano, Texas
- 2006 Jeep Commander, VIN IJ8HH48K16C314149
- 2007 Ford E250 Cargo Van, VIN 1FTNS24W37DB38130
- 2005 BMW X5, VIN 5UXFB53595LV17620
- 2007 Land Rover, VIN SALMF13497A2397A239841
- 2007 BMW M6
- Yamaha Baby Grand Piano
- Piwonski's right title and interest in Rocky Mountain Farmacy and any potential claims of the bankruptcy estate to recover assets of Rocky Mountain Farmacy[5]

Accordingly, it is questionable whether this Court has jurisdiction over any of the state law claims in the First Adversary or Second Adversary. However, the Court need not address this issue, as it finds abstention is warranted for the reasons below.

The Court must abstain from hearing a claim (mandatory abstention) if all of the following elements of 28 U.S.C. § 1334(c)(2) are met:

1)   A motion has been timely filed requesting abstention;
2)   the cause of action is premised on state law;
3)   the proceeding is non-core or "related to" the bankruptcy case;
4)   the proceeding could not have been commenced in federal court absent the commencement of the bankruptcy case;
5)   the cause of action is pending in state court; and

---

[4]  Underlying Case Docket No. 113.

[5]  Underlying Case Docket No. 100, Motion to Sell, and Exhibit 1 thereto, Asset Purchase Agreement.

6) the state court action can be timely adjudicated.[6]

In this case, mandatory abstention does not apply because a motion has not been filed. However, with respect to the state law claims, the Court finds discretionary abstention is appropriate.

If mandatory abstention is not warranted, the Court must examine whether discretionary abstention should be applicable to this case. A bankruptcy court *may* abstain (discretionary abstention) from both core matters and non-core matters in the "interest of justice," judicial economy, or in respect for state law. 28 U.S.C. § 1334(c)(1). Chief Judge Howard R. Tallman of this Court has set forth several specific factors for a court to consider in evaluating discretionary abstention.[7] The *Schempp* factors can be divided into categories, posing two overarching questions:

---

[6] 28 U.S.C. § 1334(c)(2); *Telluride Asset Resolution, LLC v. Telluride Global Dev, LLC (In re Telluride Income Growth, LP)*, 364 B.R. 390, 398 (10th Cir. BAP 2007); *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 776-78 (10th Cir. BAP 1997).

[7] Per Judge Tallman, a court should consider:

- The abstention's effect or lack thereof on the effective administration of the estate;
- The extent to which state law issues predominate over bankruptcy issues;
- The difficult or unsettled nature of any applicable law;
- The presence of a related proceeding commenced in another court;
- Any jurisdictional basis other than 28 U.S.C. § 1334;
- The proceeding's degree of relatedness or remoteness to the main bankruptcy case;
- The substance rather than the form of an asserted "core" proceeding;
- The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court and enforcement to be left to the bankruptcy court;
- The burden on the bankruptcy court's docket;
- The likelihood that bringing the proceeding in bankruptcy court involves "forum shopping" by one of the parties;
- The existence of a right to a jury trial; and
- The presence in the proceeding of non-debtor parties.

*Lucre Management Group, LLC v. Schempp Real Estate, LLC (In re Schempp Real Estate, LLC)*, 303 B.R. 866, 876 (Bankr. D. Colo. 2003) (citations omitted).

1. Is the nature of the proceeding better suited for state court or bankruptcy court?

2. How will the bankruptcy court's acceptance of jurisdiction or abstention from jurisdiction affect the administration of the case and the functioning of the courts involved?

Weaver admits there was a case against Piwonski pending in the United States District Court for the Northern District of Texas at the time of the bankruptcy petition. He contends, however, the passage of time makes it inefficient to send his claims back to that court. Piwonski also argues against abstention, asserting the state court claims have become moot.

The Court finds the state court claims have not been withdrawn as to Piowonski. The settlement in the First Adversary applied to the Chapter 7 Trustee, not Piwonski. In addition, the first three claims of the Second Adversary, which are state law claims, have not been withdrawn from the proposed Amended Complaint. Accordingly, the claims are not moot.

However, the Court finds the resolution of state law claims is better suited to either to the Federal Court in Texas, which is, despite the passage of time, familiar with the case, or a Texas state court, which would possess greater familiarity with Texas law.[8] Further, the process of allowing state law claims to be heard in another court, and then having claims involving the dischargeability of state law judgments addressed by this Court, is a common practice which often results in matters being resolved on summary judgment, rather than requiring a full trial. Thus, such a procedure does not prevent the efficient administration of the bankruptcy case, but rather may assist efficient administration. With respect to the claim under COLO. REV. STAT. § 18-4-405 in the Second Adversary, the Court recognizes this claim may need to be brought in an appropriate forum in Colorado, but finds a Colorado state court is better suited to the resolution of that claim. In addition, the resolution of all state court claims in a non-bankruptcy forum before determination of dischargeability provides consistency in the administration of the bankruptcy case. For these reasons, the Court will abstain from hearing any state law claims, including all of the claims in the First Adversary, and will abstain from hearing the first, second, and third claims in the Second Adversary.

---

[8] The Court is aware that arguably as a result of the approval of the aforementioned Asset Purchase Agreement, it could rule on the first, third and fifth claims in the First Adversary. However, the Court is concerned that other third parties, other than the Debtor, who are not before this Court, may claim ownership interests in the subject assets which are now no longer assets of the Debtor's estate. As a result, this Court believes a court of general jurisdiction is best situated to deal with full adjudication of ownership issues.

### C. Does the Court Have Authority to Hear the Parties' Disputes Under the Supreme Court's *Stern* Opinion?

The parties each assert *Stern* does not prevent this Court from hearing their various claims, and filed briefs addressing this issue. The Court finds the *Stern* analysis inapplicable to the parties' non-core state law claims, but finds *Stern* relevant to the dischargeability and exemption disputes in the Second Adversary and the Contested Exemption Matter.

In *Stern* the Supreme Court held 28 U.S.C. § 157(b)(2)(C) granted bankruptcy courts the statutory authority to render final judgments on the core matter of a debtor's counterclaims against a claimant; however, bankruptcy courts "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[9]

The Supreme Court propounded the following two-pronged test to determine whether a bankruptcy court has constitutional authority to adjudicate an action:

> *Granfinanciera's* distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a *pro rata* share of the bankruptcy *res*," *ibid.*, reaffirms that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; **the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process**.[10]

Thus, under *Stern*, bankruptcy courts may decide cases seeking a *pro rata* share of the bankruptcy *res*, but not cases seeking to augment the estate.

In other words, despite Congress's express designation of "counterclaims by the estate against persons filing claims against the estate"[11] as core proceedings, bankruptcy courts lack constitutional authority to render final decisions in cases where resolution of a **debtor's independent state law counterclaim** does not stem from the bankruptcy itself or is not necessary to resolve the allowance or disallowance of a claim against the estate.[12] If either

---

[9] *Stern*, 131 S.Ct. at 2620.

[10] *See id.* at 2618 (emphasis added).

[11] § 157(b)(2)(C).

[12] *Stern*, 131 S.Ct. at 2611 ("Here [the debtor's] claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.").

prong of the test is satisfied *(i.e.* the action either stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process), the bankruptcy court has constitutional authority to enter a final order. If neither prong is satisfied, the bankruptcy court lacks such authority to enter final judgment.

In this matter, Weaver asserts only state law claims in the First Adversary and state law claims in the first, second, and third claims for relief in the Second Adversary. Such claims appear to be non-core matters. Thus, they would not be subject to the *Stern* analysis. Moreover, Piwonski has asserted no counterclaims in either adversary proceeding which would fall under *Stern*.

However, the dischargeability claims of the Second Adversary and the issue of Piwonski's entitlement to claimed exemptions from the bankruptcy estate are core proceedings, and therefore a *Stern* evaluation may be applied. Dischargeability of a debt stems from the bankruptcy proceeding and does not involve augmentation of the bankruptcy estate. Moreover, the dischargeability claims in this case involve the amount of the debt, if any, owed by Piwonski to Weaver, whether such debt may be discharged, and whether such debt may be ameliorated by exemptions claimed by Piowonski. Thus, these matters fall within a claims allowance process. Moreover, although the parties may need resolution of the state law issues of ownership from which this Court has abstained before entitlement to exemptions may examined, the allowance or disallowance of exemptions of the property of Piwonski is ultimately for this Court to determine. For these reasons, the Court finds it possesses authority to hear the remaining non-state law claims in the Second Adversary, and the Contested Exemption Matter.

### D. Should the Court Allow Weaver to Amend his Complaint in the Second Adversary to Add a Claim Under § 523(a)(2)(A)?

FED.R.CIV.P. 15(a), made applicable to adversary proceedings by FED.R.BANKR.P. 7015, provides that leave to amend a complaint "shall be freely given when justice so requires." Rule 15(a) has been interpreted liberally to further the general policy of the Federal Rules favoring resolution of claims on their merits, not on procedural grounds.[13] In the Tenth Circuit, refusal to allow amendment generally results only from "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[14]

---

[13] *Arkansas-Platte & Gulf Partnership v. Dow Chemical Company*, 886 F.Supp. 762, 765 (D. Colo. 1995); *Moore v. United States Dept. of Agriculture*, 864 F.Supp. 163, 164 (D. Colo. 1994).

[14] *Duncan v. City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005), (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (internal quotation marks omitted)).

In this case, the lengthy delay comprises the major argument against allowing the additional claim.  The Court assigns no blame for Weaver's substitution of attorneys on May 21, 2013, nearly two years into the adversary proceedings.  Moreover, the Court notes the initial complaint in the Second Adversary contained detailed allegations of fraud and a claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.  Therefore, the Court concludes the addition of a fraud claim under § 523(a)(2)(A) will not unduly prejudice Piwonski, and the Court will therefore allow the claim to be added.

## CONCLUSION

Based on the above findings and conclusions,

IT IS HEREBY ORDERED Weaver's Motion to Consolidate Adversary Proceeding Nos. 12-1338 MER and 12-1339 MER and Weaver's Motion to Consolidate the Adversary Proceedings with the Contested Exemption Matter, are hereby DENIED.

IT IS FURTHER ORDERED the Court will abstain from hearing the state law claims in the First Adversary and the Second Adversary.  The First Adversary is hereby DISMISSED and the first, second and third claims in the Second Adversary are DISMISSED.

IT IS FURTHER ORDERED the Court has the authority to hear the remaining matters raised in the Second Adversary, and the Contested Exemption Matter under the Supreme Court's *Stern* case.

IT IS FURTHER ORDERED Weaver's Motion to Amend Complaint in the Second Adversary is hereby GRANTED.  Weaver is granted thirty (30) days to file an amended complaint in the Second Adversary to add only a § 523(a)(2)(A) claim.  Piwonski shall have twenty-one (21) days after service of the amended complaint to file the appropriate response.

Dated January 17, 2014                     BY THE COURT:

Michael E. Romero  
United States Bankruptcy Judge